Mr. Justice Scott delivered the opinion of the Court. As fraud and injury must concur to warrant the interposition of the chancellor sought by this bill, it will be unnecessary to en-quire into any alleged frauds on the part of the defendants that have worked no injury to the complainant. His claim to relief must rest primarily upon his rights to the land in question, in fraud of which the patents were procured by the defendants. These rights, if they exist, are founded upon the alleged Cherokee pre-emption right of Morrison, to which the complainant claims to be the successor; and upon his own alleged pre-emption right under the act of Congrss of the 29th May, 1830; both originating in the favor, and founded upon gratuity on the part of the Federal Government, although in advancement of that public policy which looks to the transmutation of the wild public domain into cultivated fields and private property. There can be no doubt but that Congress may rightfully attach to a pure donation of a portion of the pubjic domain, such terms and conditions as it pleases, and may invest the subordinate officers of the Federal Government with powers to determin questions of fact concerning the same, and to ascertain and settle conflicting claims touching such donation. And this would be no less true although such authority might be denied as to the confirmation of imperfect titles derived from the former proprietors of the country, and it might be held as to these that such questions could only be settled by those tribunals appointed by the constitution and laws for the settlement of every ordinary question of property, unless the parties interested should voluntarily submit to some other mode of settlement, or to some other tribunal of their own selection. And it seems equally clear that beyond the scope of the several acts of Congress upon which these two claims of right are predicated, the complainant has no place upon which to rest any pretence of right to the land in question^ For, beyond this boun - dary, he is a mere intruder and trespasser, destitute of any color of right or title either at law or inequity. He therefore can have no equity that can avail him before the Chancellor, thatis nofcbased upon his compliance, either actual or constructive, with the terms and conditions of these acts of Congress: and if he has such, from this source it must have sprung into being, and it can have life from no other. Consequently, if he has not complied with those terms and conditions, or been prevented from doing so by the agents of the General Government or the fraudulent acts of the defendants, he has no claim to the relief he seeks by his bill. We shall first bring to this test the claim of right under the alleged Cherokee pre-emption right, and then to the like test the other alleged pre-emption right. Claiming to succeed to the rights of Morrison under the former of these two claims through a number of assignments, the complainant insists that, as such successor, he was entitl'ed to a preference in becoming the purchaser of the tract of land in question. He does not, however, pretend that, as such successor to, or legal representative of Morrison, he pursued the letter of the act of Congress touching the claim. But that his own and the acts of Wylie in the prosecution of the claim, amounted together to a virtual or substantial compliance with the provisions of this act. And that consequently he was entitled to enter the land in question either in his own name or in that of Morrison: and that the right of preference in either name is sufficient as to this point for all the purposes of his bill. It seems clear to us, however, that there is no foundation for the alleged right of entry in the name of the complainant, because it does not appear either that any evidence was offered in the Land Office, tending, to show that the complainant was the then rightful successor to the rights of Morrison, or that such rigtful succession was by the land officers adjudged in his favor without evidence! It is time that the successive assignments from Wylie, the first alleged assignee of the rights of Morrison, down to the complainant were all endorsed upon the certificate of the Register, No. 28, that was presented to the land officers and filed in their office, at the time of the complainant’s written application to enter the land, but it does not appear that any evidence at all of the genuineness of any of these assignments was ever offered to the Register and Receiver or to either of them, and we know of no rule of law which made these assignments evidence of themselves: nor does it appear that their genuiness was recognized by any act of the land officers. On the contrary, their only act shown us in the premises — that of the refusal of the complainant’s application to enter the land in question — may, for any thing that appears to the contrary have been on this very ground. And we see no good reason why such a refusal upon such a'ground might not be regarded as authorized by the law, under which the claim was preferred to the land officers. Indeed it would seem manifest that when one would present himself as the successor to the rights of a pre-emptor, and ask for an entry in his own name, that under the law he would not only have to show the proper grounds for the alleged pre-emption right, but, in addition to this, should show his own succession to the rghts of the pre-emption. Thus, if it were admitted that all else had been done to comply with the terms and conditions of the grant of the right of preference, the failure to prove the alleged assignments was fatal in this case, to the claim of entry in the name of the complainmcnt, there having been no act of tire land officers shown which dispensed with their establishment by proof. We are next to examine as to the alleged equitable claim of entry in the name of Morrison. This is sought to be sustained by the certificate of the Register of the land office, issued in favor of Wylie assignee of Morrison. There is no other proof as to this relied upon, and there is none besides either way. It is not pretended that this certificate is authorized by any of the express provisions of the act of Congress, touching these claims, or by any regulations or instructions relating to this act emanating from the Secretary of the Treasury or the Commissioners of the General Land Office'. Ifis insisted, however, that it is conclusive evidence that a light of pre-emption was judicially allowed to Morrison, and that this pre-emption right thus adjudged, was then, without fui’ther judicial action on the part of the Register and Receiver, subject to be located (in the name of Morrison at least) upon any tract of the public land contemplated by the act of Congress out of which it sprung. We think it manifest that it was contemplated by the act of Congress in question that the tract of land to be entered should be designated before the adjudication upon the claim of a preemption right that was to authorize the entry, and that, consequently, in a regular course of proceeding under its provision only the particular tract designated before the adjudication was subject to entry for the satisfaction of the pre-emption right adjudged. But, admitting the irregularity, which, as to this, seems in this case to have occurred, to be a mere error, and not subject to be called in question collaterally or otherwise impeachable'than by a direct proceeding, still it will not follow that the Register’s certificate in question is sufficient, much less conclusive evidence of an adjudication in favor of Morrison, by the Register and Receiver. Because, having been unauthorized by law as an instrument of evidence, it is but the certificate of an individual, which might be evidence of his own act, but could not evidence the act of another. Such a certificate, upon common law principles, could amount only to an admission by the party giving it of his own official act. And to permit it to establish such an act of another without some express provision of law would be to disregard at least two well known rules of evidence. For it would be allowing the ipse dixit of one, not under oath as to the matter said, to establish a fact against a third person without an opportunity of cross-examination 1 Nor can any aid be derived for the complainant from the considerations urged by his counsel that as against the government a right of preference was no privilege, but such only as against individuals, and that he claimed not against the government, but under it, and was therefore entitled to the fullest benefits of every admission of her officers. Because, whether in such case a technical privilege or not, nothing short of a compliance with the provisions of the law, or an admission on the part of the government, through her officers, that the terms had been complied with, can found any such claim to the land, as would be recognized by a court af justice; and here the admission is only by one of two officers who were authorized to do a joint judicial act. Nor did the practice of the general land office, as to these Cherokee certificates and the assignments upon them, as shown by the deposition of Doctor Fraily, conflict with these principles of law; because the action there was always after the entry of of the land by persons claiming to bo the assignees of Cherokee pre-emptors. At which period the duplicate Receiver’s receipt was as good evidence of his judicial action preceding the entry as the Register’s certificate was of his. And indeed the Receiver’s receipt in such case purporting upon its face to have been issued on account of a Cherokee pre-emption, in connection with the Register’s return of the corresponding entry, was legitimate evidence of the joint adjudication of these two officers in favor of the pre-emption right; because this was their final action in the mode pointed out by law' and the regulations of the land department, and was the direct result of such joint adjudication. And not unlike the “patent certificates,” prescribed by the regulations for the Register and Receiver at Little Rock, dated August 26th, 1828, under the donation act of the 24th May, of that year, which, in connection with the monthly list of cases adjudicated ordered to be forwarded to the General Land Office by the Register and Receiver, was evidence of the joint judicial action of the two officers upon the claim for a donation and of the particular tract entered. (Inst. fy. Op. No., 243,p. 413.) The language of the certificate is dubious, and by no means necessarily imports that an adjudication was actually made by the two land officers. All that is stated in it may be true, and nevertheless an adjudication might not in fact have been made, but deferred; and there can be no presumption to aid this uncer-tianty, because it docs not appear that all the regular steps contemplated by the act of Congress had been taken — no tract of land having been designated for entry — that would have made it the imperative duty of the two officers to adjudicate the claim. But if all these objections were disregarded, and the certificate was received as evidence of all it purports, and its language construed most favorably for the complainant, and the irregularity as to the designation of the tract of land considered as cured either by the supposed judicial action previously to the issuance of the certificate, or by the subsequent written notice and application of the complainant by his attorney, Roane, still the complainant cannot be considered as having made out his case. Because it no where appears that any evidence was ever produced in the land office, either before or at the time when the application for the enty was made by the attorney, Roane, or subsequently before the expiration of the timo allowed by the act of Congress to show either that Morrison or the complainant had made any improvement upon the land in question, as contemplated by the act of Congress, or that the same was unimproved and for that reason subject to the pre-emption entry. And the rejection by the Register and Receiver of the application for the entry when made, as shown by the deposition of Roane, cuts off any presumption in the complainant’s favor as to either of these facts. We think it clear, thereof, that it has not been made to appear either that the complain ant, or those under whom he claims, or all of them together, have complied with the terms and conditions of the act of Congress on which this Cherokee pre-emption claim is founded, either by means of their own acts or, in addition to these, by admissions on the part of the government by the acts of her agents. Nor has any fraudulent acts on the part of the defendants, or those under whom they claim, been shown, which could have prevented a full compliance on the part of the complainant with all the terms and conditions of the law. Nothing is attempted to be shown as to this, except the location of the New Madrid claims, which were afterwards declared void, and any obstacle to the complainant and to those under whom he claims, presented by these locations during the time they rested upon the land in question, could have been overcome by a complete compliance with all the requirements ef the act of Congress, although the naked entry might have been refused on such completely regular application. And there is nothing shown as to these New Madrid claimants to indicate that they were not, in making the location, as honestly presenting what they supposed to be their own rights, as the complainant and to those under whom he claims were in presenting what they supposed to be theirs : and under such circumstances any relaxation of effort or short comings of the complainant cannot in equity be laid at the door of the defendants. Nor has it been made to appear that the complainant and those under whom he claims, were prevented from a complete compliance with the act of Congress, by the agents of tho government, as it docs not appear that they either refused to permit him to do all needful acts, and make all necessary proofs, or that they dispensed with a strict compliance in any particular in which he failed. It is true that they refused his application to enter the land in question, and at that time it was legally subject to entry (because the supposed location that was then upon it, was absolutely void as was subsequently declared,) but this was no wrong to the complainant unless he can also show that, at that time, he and those under whom he claims, had in all things complied with the terms and conditions of the act of Congress, and thereby entitled himself to the entry, or that in the particulars in which he liad tallen short, a strict performance in law or in fact had been dispensed with either by the neglect or refusal or affirmative action of the Register and Receiver within the discretion commit' ted to them by the law of Congress And we find no such showing made out by the testimony. Then, in the light of these several views, we feel clear that the complainant has failed to establish any equity which can entitle him to relief in tho premises founded upon his alleged Cherokee pre-emption claim. And even had we held the certificate in question evidence of a complete virtual compliance with the terms and conditions of the act of Congress in matter of fact, and also in matter of law, in a corresponding regular adjudication in his favor by a tribunal of competent powers, neverthless the allegations in the bill are two narrow for the relief sought in alleging the judicial examination and determination to have been by the Register only, instead of by tbe Register and Receiver, as provided by the act of Congress. We have next to examine the complainant’s alleged equity founded upon his pre-emption claim under the act of Congress of the 29th May, 1830. In this, as in the other claim, the entry was refused although the application was within the time prescribed by the act of Congress, and the tract of land was at that time legally subject to entry under the law. But, does the complainant show his title to entry? Did he comply with the terms and conditions of the •act of Congress under which he made the application for entry either in fact or in law? He does not contend that there was strict compliance in fact • on his part; but as to this, insists that inasmuch as other preemption claims were allowed by the same land officers on proofs even more defective than those exhibited by him, that his must therefore be taken and considered as' sufficient. This mode of reasoning can avail him only in case there was an adjudication in his favor by the land officers. If there was none, it is incumbent on him to show that he did all, as far as he was able, that he was required to do under the law. His application was not for a pre-emption right in gross, but for a preference in the purchase of the particular tract of land in controversy founded upon his alleged compliance with the act of Congress, and the facts, as to occupancy and cultivation, a pre-requisite to the preference he claimed, had to be established to the satisfaction of the Register and Receiver. Had his application been allowed by these officers, no question would have been open as to the sufficiency of the proofs offered to establish these facts. Their decision in favor of the application would have been a judicial determination as to the sufficiency of the proof which could not have been cok laterally enquired into. But the record shows distinctly that the application, as we have stated it, was rejected. • It is insisted, however, that, although this is true, there is nevertheless enough in the record to show that there was a judicial determination in favor of the sufficiency of the proof, and by tbis means the complainant is saved from the necessity of now showing to the chancellor that he did, in fact, strictly comply with the law; or, in other words, enough in the record to authorize him, as a foundation for relief, to present a compliance in law, instead of a compliance in fact, "We have not been able, however, to find this position sustained by the evidence, which, in every legal view that we can take of it, fails to show that the judicial action of the Register and Receiver was in fact in favor (and not against) the sufficiency of the testimony offered as to the occupancy and cultivation, while, at the same time, it was against the claim to the entry of the land in question, simply because that was then covered by the New Madrid claims, or because the plats were not then in the land office. The fact that other pre-emption claims were allowed by the same officers upon testimony apparently more unsatisfactory than that which, seems to have been adduced before these officers, in support of the complainant’s claim, is by no means conclusive that his must have been adjudged sufficient, if passéd upon at all. Because, for aught that appears to the contrary, there may have been, in all such cases, other corroborating oral testimony, or facts may have been within the knowledge of the officers, of which no memorial has been preserved. And in all such cases, where the claims were allowed, being thus sustained by a judicial sentence in their favor, the claimant ceased to be interested in the preservation of any memorial of such additional corroborating testimony, and a foundation is thus laid for a stronger presumption in favor of other testimony than in cases where the claims were rejected. Because in the latter class of cases, inasmuch as the claim was unsustained by any judicial action in its favor, if the claimant relied upon its justice, and desired to prosecute it further, his interest would impel him to take all needful steps to preserve to the fullest extent all such additional testimony. We might, therefore, to some extent, well presume, upon this ground alone, that there was additional testimony in aid of that preserved in cases that were allowed on apparently unsatisfactory testimony, and, in aid of this presumption so grounded, would be tire legal presumption that these officers had done their duty and required sufficient testimony, although they had failed to preserve some portion of it. While, on the contrary, in rejected cases, neither of these grounds of presumption would exist in favor of such additional testimony, but both would be directly against its having ever been adduced., And the same would be true as to tire evidences of any judicial determination in his favor. Because if any such determination was in legal effect in his favor, although in terms against Mm, he would have been directly interested in tailing* steps that would have resulted in some memorial that would have distinctly shown the true legal signification of such decision — steps which, in effect, might have performed the usual office of a bill of exceptions. And when no such action was taken on his part, or shown to have been attempted, there would seem to b,e no foundation for any presumption in his favor, not embraced within terms of the efficient action of the Register and Receiver. The evidence in this record, bearing upon the question as to to what was the determination of the Register and Receiver upon the complainant’s application to them to obtain a preference in the purehase of the tract of land in controversy, under the provisions of the act of Congress, tends, for the most part, to show not a qualified or special, but an unqualified or general rejection or allowance of the claim. Certainly the official papers produced in evidence bearing upon this point are almost wholly of this character, and beside these there is but little evidence direct or circumstantial any way otherwise. And we have seen that nothing can be presumed in favor of the complainant on this question, and consequently, that whatever may restrict or qualify this determination of the Register and Receiver, or establish it in any way different in substance from what its terms purport, must be shown on his part. The word “Rejected,” endorsed on the original papers over the signature of the Register and Receiver, in connexion with the mass of testimony taken by deposition, to show that it was a custom almost invariable with the district land officers, to endorse the result of their adjudication in this manner, is direct evidence to show affirmatively an unqualified rejection by the officers at Batesville of the complainant’s claim to a preference in the entry of the land in question, under the act of Congress, on which it was founded. And this, in the absence of all other testimony and of any provision of law, or regulation of the General Land Office, relating to the production or preservation of evidence of such adjudication, would in itself be absolutely conclusive against the claim for relief. The return to the General Land Office, by the Register and Receiver at Batesville, after the expiration of the law, of a list purporting to exhibit' all pre-emption claims allowed at that office during the life of the law, signed by both of those officers, and accompanied by a letter from them to the Commissioner of the General Land Office, advising him that it is “ a list of all the claims granted under the act of Congress of the 29th of May, 1830,” corroborates that of the endorsement upon the original papers, and is, in itself, strong negative testimony that the complainant’s claim was never allowed by these officers. Rutherford’s certificate, as is shown by his deposition, was based entirely upon Dickinson’s abstract, sent to the Land Office at Little Rock, after the establishment of the new land district, and was made out from this, without any examination of the original papers in his office. And this abstract of Dickinson’s, as appears by his deposition and by other facts and circumstances in proof, was based entirely upon a paper in the hand-writing of Pentecost, not signed by either of the Land Officers, but found in the Land Office at Batesville by Dickinson, when he entered upon his official duties there, and which purports to be “ A list of preemption claims allowed at the Land Office at Batesville, from the 8th January, 1831, to the 30th June, 1831, under various acts of Congress.” And Pentecost says that this list was made out by him while a clerk in the Land Office at Batesville, under and by the direction of Boswell, the then Register. • The complainant contends that this list, so made out by Pentecost, and found in the Land Office by Dickinson, is better evidence of what was the decision of the Register and Receiver on the complainants claim than, the endorsement upon the original papers, or the return made to the General Land Office. And he predicates this upon the position that the endorsement upon the original papers was a mere custom, while, under the circular of the 7th February, 1831, (Inst. & Opin., p. 448,) it was the official duty of the Register and Receiver to keep in the Land Office a “list or abstract” like this. And as, under the same circular, it was the official duty of these officers to “transmit a copy” of such “list or abstract” to the General Land Office after the 29th ' May, 1831, he contends that the return to the General Land Office before mentioned, made by these officers, was a mere copy, and, as such, is a lower grade of evidence than the list found in the office. It will be found, however, by an examination of this circular, that the “abstract or list” directed to be kept in the Land Office was not a general list embracing all pre-emption claims allowed under every pre-emptioh law that had been passed by Congress, and whether the plats embracing such claims were in the office or not, but simply an “ abstract or list” of claims allowed under the act of the 29th May, 1830, in cases where the plats were not in the office. And it will be found also, by an examination of the return to the General Land Office, that it is not a true copy of the list found in the Land Office at Batesville, and does not purport to be a copy of that, or any other paper, or record, or to have been made upon the data of any such, nor does it purport to embrace only cases that were allowed where the plats were not in the Land Office, but all cases allowed under the act of Congress entitled “ An act to grant pre-emption rights to settlers on the public lands,” which act, by the joint letter of the Register and Receiver, transmitting the report to the General Land Office, appears to be the act of the 29th May, 1830. Both the list found in the Land Office and the return of the of - ficers to the General Land Office, are more comprehensive than the circular, and the list is also more comprehensive than tbe return in embracing all claims allowed under “various acts of Congress,” while the return only embraces all claims allowed under the act of 29th May, 1830. Neither the list then found in the Land Office, nor the return sent to the General Land Office, would seem to be such papers as would have been probably executed under this circular in the regular course of official business. And if it were supposed that the officers intended the list to be a substantial compliance with the circular, (althoughmore comprehensive,) and superadded the excess for their own personal convenience in offering data for other returns under other circulars or instructions from the General Land Office, still the return to the General Land Office would not harmonize with such a supposition, because it is more comprehensive than the circular as to claims to be returned, and also does not purport to be “a copy,” nor is in fact a copy of the list in so far even as cases were concerned in which the plats were not in the office, if it be true that the plat for township number 1, N. of range 12 west, was not in the office when the complainant’s case was allowed as contended by him, and it is expressly shown by Tully’s deposition that the plat was in the office some twenty days before the date of the return. This list, then, so found in the Land Office, cannot be said to present within itself any satisfactory evidence of the character assumed for it — any intrinsic evidence of its authenticity as evidence of the highest grade to establish what was the adjudication of the Register and Receiver on a pre-emption claim. So far from this, when it is remembered that it purports to embrace not only all cases allowed under the act of 1830, whether the plats embracing the lands claimed were in the Land Office or not, and also all such cases under various acts of Congress and is not authenticated by the signatures of the officers, or either of them, and that it is shown by the deposition of Pentecost to have been made out by him under the direction of the Register alone, and that it is in no way shown that it ever was recognized or approved by the Receiver, or was in any way, otherwise, their joint official act, and that it is expressly contradicted, as to what was the decision of the Register and Receiver on the complainants’s claim by other direct competent testimony, it sinks in the scale of testimony, at least as low as the place assigned it by Tully, in his first deposition, that is to say, to “a mere index to, or memorandum of, higher official testimony.” This return, then, to the General Land Office, was not a mere “copy,” as contended by complainant’s counsel, but an original official act of the Register and Receiver at Batesville, and although not provided for by the terms of the act of Congress, or directly embraced by any express general instructions from the Commissioner of the General Land Office, was nevertheless the joint official act of the General Land Officers at Batesville, over their signatures, and recognized as such in the General Land Office, where, from the endorsement upon it, it was received and filed accordingly, and the copy read in evidence was certified by the Commissioner of the' General Land Office, under the seal of that office as taken from its files. Under similar laws of Congress, like acts of the Registers and Receivers of the District Land Offices have been, from time to time, recognized as official, and like papers when received from these offices have been regarded as official acts by the commissioner of the General Land Office. (See Inst. & Opn.,p. 395, letter dated May 10, 1826. Ib.,p. 397, 398, dated July 13, 1826. Ib.,p. 539, dated 9th December, 1818.) Such being the character of this paper, we are of the opinion that it was competent primary evidence of its purport and far superior in dignity to the general memoranda found in the land district at Batesville. This return, however, does not purport to show what was the decision of the Register and Receiver at Batesville, upon the complainant’s claim, but only to exhibit all pre-emption claims, granted by these officers, under the act of the 29th May, 1830, both in that class of cases, where the plats of survey were in, and where they were not in the land office. And, as the complainant’s claim is not embraced among the cases reported, this return affords strong negative testimony thatit was never allowed. And thus, this return corroborates the direct testimony of its unqualified rejection found endorsed over the signatures of the Register and Receiver, on the original proofs presented to those officers in support of the application, which we have already briefly alluded to, in connexion with the testimony taken by deposition, to show that such endorsement of the result of an adjudication (when the claim was rejected) was almost the universal custom of the district land officers. And there is no provision of the act of Congress, or regulation of the General Land Office or any other custom of the district land officers proven, under which any higher evidence of the rejection of a claim to a preemption can be had than the endorsement to that effect upon the proof offered signed by the two land officers, who made the decision. We think, therefore, that such an endorsement, so signed officially by the two land officers, is equally competent primary evidence of the rejection of a claim as the return so signed officially would be of the allowance of one. When a claim might be rejected, no further official act than to note its rejection, could be within the scope of the official duty of the Register and Receiver, unless some further action was affirmatively required by the applicant seeking the reversal of the decision. To report such a case to the General Land Office, unless at the instance of the applicant, who might seek the reversal of the decision, could be of no possible- utility, nor could there in such case be any i’eason to do more than briefly note officially the rejection. In case of the allowance of the claim, however, further duties would be incumbent on the Land Officers, the discharge of which would produce direct evidence of what had been their decision, even if not in any way noted at the time. And if there was no impediment to the immediate entry of the land claimed, and that was done at once, there would be no utility in either noting the allowance of the claim, or of making any return of its allowance otherwise than by a return of the entry. So that the noting of the rejection, and that of an allowance of a claim, stand on somewhat different grounds as to utility and official duty, and in case there might be conflict between the noting of a rejection upon the original proofs, and a subsequent return of allowance in the same case, the' question as to which might be the better evidence of the decision of the land officers in such a case, might depend upon the particular circumstances of that particular case. In the case before us, however, we have no such question to decide, because the endorsement of rejection upon the original papers, does not conflict, but harmonizes, with the return to the General Land Office made by the Register and Receiver, and they mutually support each other. This concurring testimony, unopposed as it is by any facts or circumstances in proof, in any material degree inconsistent with such a conclusion, establishes very clearly, as we think, the unqualified rejection of the complainant’s claim. Then, so far from its having been shown on the part of the complainant that there was a judicial determination by the Register and Receiver in favor of the sufficiency of the proofs as to occupancy and cultivation, the very reverse is settled in the establishment of the decision of these officers rejecting his claim: for this was the very question before them, on which their judicial discretion was to be exerted, and is necessarily included in the unqualified rejection of the claim. And here we might well conclude, and hold that the complainant has wholly failed to establish equity that can entitle him to relief. Because it is not contended in his behalf that it has been shown that the proofs offered in support of his claim before the Register and Receiver were sufficient in point of law to establish the facts of occupancy and cultivation contemplated by the act of Congress; but 'that although not so, nevertheless, they were so received, considerd and adjudged by these officers : and that on this basis he must be regarded by the chancellor as having virtually, so far as he was able, done all in his power to comply with the law and was prevented from perfecting his title by unauthorized acts or omissions on the part of the government and her agents. And we have just seen that the very reverse of such a decision has been established by the testimony. Consequently, having shown no actual compliance with the law to the full extent of his ability, and no judgment of the Register and Receiver by which any defects in his proof might be cured, and no refusal of these officers to determine his case, and in general no neglect* refusal or impossibility of action on the part of the government or its agents responsive to what was required of him under the law, he has established no title to the land in controversy either at law or equity. Under this state of the case, the effort on the part of the complainant to show, upon the basis of possibilities and probabilities, that the decision of the Register and Receiver was substantially and radically different from what its established terms purport, is not unlike an effort to show by like means that the judgment of a court of competent j urisdiction was the reverse of what it purports on is face. If in fact and in truth the proofs in this case were considered and adjudged by the Register and Receiver sufficient to establish the occupancy and cultivation contemplated by the act of Congress, and their rejection of the claim was really because the land in controversy was then covered by the New Madrid claims, or for any reason other than that the occupancy and cultivation was not satisfactorily shown, the complainant could have taken steps by which all this might have distinctly appeared on the files or records of the land office at Bates-ville, or of the General Land Office, either as parcel of the decision itself, or in a manner equally as authentic as the evidence which now shows the decision. But having failed to show that he took such steps or was prevented on the part of the Government, every presumption in favor of the regular and rightful action of the Register and Receiver now stands in full force against him. And consequently every fact and circumstance relied upon on his part to show that the decision against him was only against his naked application to enter and pay for the land, and not against the sufficiency of his proofs in support of his alleged pre-emption right, is easily to be reconciled with the hypothesis that the decision against him was because of the insufficiency of these proofs. If then the complainant could be permitted to assail this decision of the Register and Receiver against him — a decision of a legally competent although special tribunal — on any other ground than want of power in these officers or fraud in the defendants or those under whom they claim, touching the decision, nothing short of an affirmative showing that would override all presumptions in its favor, could avail him. And his case, as it appears in this record, is far short of that standard. And as there is no pretence of want of authority in the officers who made the decision, no showing that it was ever reversed or set aside, and no proof that it was procured by fraud in the defendants or those under whom they claim, no case has been made to authorize us to disregard it. The complainant then having- wholly failed to establish any title, legal or equitable, to the land in controversy, in virtue of either of his alleged claims, it is entirely unnecessary to examine and decide upon his charge of fraud against the defendant, in obtaining the patents to the land from the General Government, because, although' this charge might be found true, no relief could be decreed to the complainant; he having shown no title, the fraud could not, therefore, injure him. We therefore hold, upon the whole case, that the complainant is not entitled to any such relief as he has prayed in his bill, and that in the decree of the court below dismissing it, there is no error. That decree must therefore be affirmed.